UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTOR LINSDEY, II,

                Petitioner,                Case Number 2:14-cv-10561
                                                      Honorable Arthur J. Tarnow

J.E. THOMAS,

                Respondent.
_____/

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT [dkt. 17], (2) DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS, AND (3) GRANTING A CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Victor Lindsey, ("Petitioner"), a Michigan Department of Corrections prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges his 2003 Wayne Circuit Court convictions of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm, MICH. COMP. LAWS § 750.227b. As a result of these convictions, Petitioner received a controlling sentence of life imprisonment.

The petition raises four claims: (1) Petitioner's trial counsel was ineffective for failing to challenge the sufficiency of the evidence; (2) trial counsel was ineffective for failing to present an alibi defense; (3) the prosecutor used conflicting theories of guilt at Petitioner and his co-defendant's trials; (4) Petitioner's sentence was improperly based on an "enhanced" charge.

This matter is before the Court on Respondent's motion for summary judgment, in which he asks the Court to dismiss the petition as untimely. Petitioner filed a response to the motion asserting that his claims are based on new evidence and that he is actually innocent. For the reasons set forth herein, the Court agrees with Respondent and dismisses the petition for failure to comply with the

one-year statute of limitations set forth at 28 U.S.C. § 2244(d). The Court will, however, grant a certificate of appealability and permission to appeal in forma pauperis.

## I. Background

The evidence presented at Petitioner's trial indicated that on April 14, 2001, five men were riding around Detroit in two cars with the intent to engage in a series of home invasions targeting Arab-Americans. The five men included Apardo Woodward, DeAngelo Brooks, Dave McQueen, Miguel Harris, and Petitioner.

According to Woodward's testimony, Petitioner and Brooks began arguing because Brooks wanted to back-out of the scheme. Woodward explained that he and Brooks were in a car following the other three men who were in a separate car. The two cars parked at a dead end. Petitioner approached Woodward's car and told Woodward to go talk with McQueen. Woodward then heard shots coming from his car, where Petitioner and Brooks were located. The next trial day, Woodward recanted his testimony. A police officer testified that during the intervening night Woodward had been mistakenly placed in a cell with Harris.

Evidence indicated that Brooks' body–which had eighteen gunshot wounds–was discovered lying on a street within an area associated with a street gang known as the "Gucci Boys."

Further evidence indicated that Harris gave a statement to police that Petitioner believed Brooks had snitched on a man named Orlando Fountain in connection with an armed robbery. Harris told police that he heard Petitioner tell McQueen that he was about to kill Brooks shortly before the shooting. Harris said that Petitioner suggested that they dump Brooks' body in an area controlled by the "Gucci Boys." Harris then followed Petitioner to the Ambassador Bridge and assisted burning the car in which Brooks was killed. At trial, Harris testified that his statement was not true.

In rebuttal, a police officer testified that Harris was told that if he testified against Petitioner, his brother would be killed.

Brooks' brother testified that Harris told him that the shooting occurred after Petitioner got in an argument with Brooks, and that Harris took him to the place where they burnt the car. Brooks' brother went to the police with this information. Later a burnt car was found at the location.

Petitioner was subsequently convicted of the offenses indicated above.

In July of 2003, Petitioner filed an appeal of right with the Michigan Court of Appeals. On January 13, 2005, the Michigan Court of Appeals issued an unpublished memorandum opinion affirming Petitioner's convictions. *People v. Lindsey*, No. 250145 (Mich. Ct. App. Jan. 13, 2005). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On July 26, 2005, the Michigan Supreme Court denied Petitioner's application. *People v. Lindsey*, 699 N.W.2d 702 (Mich. 2005) (table).

Approximately eight years later, on May 14, 2013, Petitioner filed a motion for relief from judgment in the trial court. The trial court denied this motion on January 21, 2014. Petitioner has a year to appeal this decision to the Michigan Court of Appeals. Mich. Ct. R. 7.205(F). The state court record filed with the Court does not indicate whether such an appeal was taken, but the fact is irrelevant to the statute of limitations analysis.

Petitioner originally filed this habeas petition in the United States District Court for the Middle District of Pennsylvania on January 24, 2014. That court ordered the case transferred to this Court on February 6, 2014.

## II. Discussion

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Absent tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires. See 28 U.S.C. § 2244(d)(1); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

There are two potential starting points for the statute of limitations in this case. The first one would be when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A). "Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). If this starting point controlled, the petition would be untimely filed absent a substantial period of equitable tolling as discussed below because Petitioner's direct appeal ended in 2005.

Alternatively, Petitioner may assert that his claims are based on previously unavailable facts, and the starting point would then be the date on which the factual predicate of his claims could have been discovered through the exercise of due diligence. § 2244(d)(1)(B). The other two potential starting points under the statute do not apply because Petitioner is not alleging that his claims are based on new law or that the state prevented him from filing his petition. See §§ 2244(d)(1)(C) and (D).

First, using the conclusion of direct appeal under subsection 2244(d)(1)(A) as the starting point, the limitations period began running in 2005 and continued to do so until he filed his state post-conviction review proceeding in 2013, well past the one-year deadline. See § 2244(d)(2).

For the petition to be timely if §2244(d)(1)(A) is used as the starting point, then, Petitioner would need to demonstrate entitlement to equitable tolling. The AEDPA statute of limitations is subject to equitable tolling in appropriate cases, *Holland v. Florida*, 130 S. Ct. 2549, 2560; 177 L.Ed.2d 130 (2010). A petitioner is entitled to equitable tolling only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner asserts that he is entitled to equitable tolling because new evidence shows that he is actually innocent. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin v. Perkins*,    U.S.   , 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted

him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); see also *House v. Bell*, 547 U.S. 518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting Schlup, 513 U.S. at 321).

In support of his claim of actual innocence, Petitioner claims that McQueen was convicted of the same murder in 2003, that a judge who temporarily presided over his case, Kim Worthy, became the Wayne Circuit Prosecutor in 2004–revealing a conflict of interest, and that he has six alibi witnesses who signed affidavits that Petitioner was at his girlfriend's house sick with the flu from April 2, 2001, until April 16, 2001. He also asserts, without any proffered support, that Woodward never owned the type of vehicle associated with the murder, that different caliber bullets were used than suggested by the witnesses, and that Harris was able to obtain a plea bargain in another murder case as a result of his testimony against Petitioner.

None of these items establishes Petitioner's actual innocence under the standard set forth in *McQuiggin* and *Souter*. There are legitimate reasons why reasonable jurors would discount each of the items of new evidence. The affidavits of the alibi witnesses were executed in 2013, about a decade after Petitioner's trial. A reasonable juror might question the credibility of witnesses known by and associated with Petitioner who waited a decade to come forward. See, e.g., *McCray v. Vasbinder*, 499 F.3d 568 (6th Cir. 2007). The fact that Judge Worthy later became the county

prosecutor in no way demonstrates Petitioner's actual innocence. By the same token, the fact that McQueen was later convicted of the murder, does not exculpate Petitioner. Petitioner has not shown that McQueen was not convicted as an aider-abettor. The fact that Woodward supposedly did not own the type of vehicle associated with the murder–an allegation Petitioner does not support with any documentation despite the alleged use of a private investigation firm–also does not undermine Petitioner's guilt. The prosecutor's theory did not require Woodward to own the vehicle, just that he was occupying one at the time. Lastly, Harris' plea bargain–and again Petitioner does not document such a bargain–might be used to question his credibility, but it does not demonstrate Petitioner's innocence. That is, taken as a whole, Petitioner's claim of actual innocence does not establish that "it is more likely than not that no reasonable juror would have convicted him." *Bousley, supra.*

Next, using the date on which the factual predicate of Petitioner's substantive claims presented could have been discovered through the exercise of due diligence as the starting point for the statute of limitations under subsection 2244(d)(1)(B), he fairs no better. Obviously, if true, Petitioner knew who he was with on the date of the murder, and could have raised an ineffective assistance of counsel claim for failing to call them well before he filed his motion for relief from judgment. Further McQueen was convicted soon after Petitioner was in 2003, so a claim regarding inconsistent theories could have been discovered soon afterwards. Accordingly, even using § 2244(d)(1)(B) as the starting point for the statute of limitations, Petitioner's application is still untimely. Petitioner's other items of new evidence do not relate to his substantive claims, but to claim of innocence, so they are not relevant to the subsection 2244(d)(1)(B) analysis. Respondent's motion for summary judgment will therefore be granted.

### III.  Conclusion

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*. Having undertaken the requisite review, the court concludes that jurists of reason might find the court's procedural ruling debatable. The Court also will grant Petitioner permission to appeal in forma pauperis.

### IV. Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **GRANTED**.

> S/Arthur J. Tarnow
> Arthur J. Tarnow
> Senior United States District Judge

Dated: February 12, 2015

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 12, 2015, by electronic and/or ordinary mail.

> S/Catherine A. Pickles
> Judicial Assistant